**Dorian S. DAWSON, a minor, by his Guardian ad Litem Jennifer Lesane THOMPSON, et al, Plaintiffs,**

v.

**CIBA–GEIGY CORP., USA, Novartis Pharmaceuticals Corp. et al, Defendants.**

**No. Civ 00–6162.**

United States District Court, D. New Jersey.

May 23, 2001.

Marc C. Saperstein, Davis, Saperstein & Salomon, PC, Teaneck, NJ, for Plaintiffs.

Sean Robert Kelly, Saiber Schlesinger Satz & Goldstein, Newark, NJ, Anne Murray Patterson, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Defendants.

## OPINION

HOCHBERG, District Judge.

This matter comes before the Court on a motion to remand by Plaintiffs. Also pending are several motions to dismiss

under Fed.R.Civ.P. 12(b)(6) filed by Defendants. This Court having reviewed the motions and heard the oral argument of the parties on the motion to remand and for the reasons set forth below, Plaintiffs' motion to remand is granted.

## I. *FACTUAL AND PROCEDURAL HISTORY*

Plaintiffs filed a class action Complaint on September 13, 2000, in the Superior Court of New Jersey, Law Division, brought on behalf of persons who have used the drug Ritalin [1] or purchased Ritalin for use by their children. Defendants are Novartis Pharmaceuticals Corp. ("Novartis"), the manufacturer of Ritalin,[2] the American Psychiatric Association (the "APA"), which Plaintiffs allege determines and publishes the diagnostic criteria for Attention Deficit Disorder ("ADD") and Attention Deficit/Hyperactivity Disorder ("ADHD"), the disorders for which Ritalin is commonly prescribed, and Children and Adults with Attention–Deficit/Hyperactivity Disorder ("CHADD"), an organization which Plaintiff alleges enables Novartis to illegally advertise Ritalin.[3]

Plaintiffs' Complaint alleges that Defendants individually and collectively injured Plaintiffs through the promotion, sale and distribution of Ritalin. Specifically, Plaintiffs claim that Novartis and the APA "planned, conspired and colluded to create, develop and confirm the diagnoses" of ADD and ADHD "to increase the market for its product Ritalin." (Compl., ¶ 9).

Plaintiffs further allege that Novartis deliberately and negligently promoted the sale of Ritalin by distributing misleading sales and promotional literature to parents, schools and other interested persons. According to Plaintiffs, the literature distributed by Defendants fails to provide adequate information about many of the hazards of Ritalin and misrepresents the efficacy of Ritalin. (Compl.¶ 12–15). Plaintiffs seek relief under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et. seq.;* Plaintiffs also sue under theories of fraud, misrepresentation, negligence, and breach of express and implied warranties. Plaintiffs seek relief in the form of exemplary damages, disgorgement of profits, restitution, medical monitoring and an injunction barring the methods and practices pursuant to which Defendants allegedly misrepresented the benefits and hazards of Ritalin.

Defendants timely filed a notice of removal with this Court on December 21, 2000. Plaintiffs filed a motion to remand, which the APA opposed. Defendants CHADD and Novartis joined in APA's opposition. Defendants claim that because Plaintiffs' Complaint seeks injunctive relief in a form which requires further approval from the Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act (the "FDCA"), 21 U.S.C. § 321 *et seq.*, federal question jurisdiction exists and this case was properly removed to this Court.[4]

---

1. Ritalin is a trade name for the substance methylphenidate.

2. Ciba–Geigy Corp., U.S.A. is also a named defendant. According to Defendants' Notice of Removal, the pharmaceutical business of Ciba–Geigy Corp. U.S.A. has since been transferred to Novartis, making Novartis the successor in interest with respect to Plaintiffs' claims; Ciba–Geigy Corp, U.S.A. has ceased to exist.

3. At least two other class action lawsuits have been filed in California and Texas, alleging many of the same complaints against these Defendants.

4. The parties agree that diversity jurisdiction is not available and the sole issue is federal question jurisdiction.

## II. *STANDARD OF REVIEW: REMOVAL*

The question presented is whether Plaintiffs' state law claims for misrepresentation and fraud by Defendants regarding the drug Ritalin should be restated as a claim "arising under" federal law, due to the regulation of Ritalin under the FDCA.

■ Congress has provided for removal of cases from state court to federal court only if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Congress gave the federal courts general federal question jurisdiction in the Judiciary Act of 1875, providing "[t]he districts courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). Federal removal statutes are to be strictly construed, and all doubts regarding removal are to be resolved in favor of remand. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991) (citations omitted).

■ The presence of federal question jurisdiction is governed by reference to the "well-pleaded complaint" doctrine. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Pursuant to this doctrine, a case "arises under" federal law and is therefore removable only if a federal claim exists on the face of Plaintiffs' complaint. *Id.* The fact that Plaintiff's state law claims may be preempted by federal law is insufficient to confer federal question jurisdiction. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir.1995). Thus, removal is not proper if based on a defense or an anticipated defense which is federal in nature, even if both parties admit that the federal defense is the only real question in the case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under [a federal statute] does not establish that they are removable to federal court."); *see also Gully v. First Nat'l Bank* 299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70 (1936) ("By unimpeachable authority, a suit brought upon a state statute does not arise under an Act of Congress or the Constitution of the United States because *prohibited* thereby") (emphasis added).

■ One corollary to the well-pleaded complaint rule is the doctrine of "complete preemption."[5] *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425. Although normally federal preemption only provides a federal defense and does not permit removal, in certain circumstances the preemptive force of federal law is so powerful that it completely displaces any state law cause of action, and leaves room only for federal law for purposes of the "well-pleaded complaint" rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also Dukes*, 57 F.3d at 354;[6] 15 James Wm. Moore *et al.*,

---

**5.** Use of the term "complete preemption" is something of a misnomer, because the doctrine is not a preemption doctrine, but is a federal jurisdiction doctrine. As stated above, the fact that a claim may be preempted is insufficient to confer federal question jurisdiction. *Dukes*, 57 F.3d at 353. Some commentators have suggested that the term "jurisdictional preemption" would be more appropriate. *See* 15 James Wm. Moore *et al.*, *Moore's Federal Practice*, ¶ 103.45[1] (3d ed.1999).

**6.** In *Metropolitan Life Ins. Co.*, the Supreme Court acknowledged that federal preemption

*Moore's Federal Practice,* ¶ 103.45[1] (3d ed.1999). This is known as the jurisdictional doctrine of "complete preemption" or "displacing preemption." Complete preemption only exists if: (1) "the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls," *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.1988) (citing *Franchise Tax Board,* 463 U.S. at 24, 26, 103 S.Ct. 2841); and (2) there is "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor,* 858 F.2d at 942 (citing *Metropolitan Life Ins. Co.,* 481 U.S. at 64–66, 107 S.Ct. 1542). The Third Circuit explained the logic of these requirements:

> In order to determine whether it possesses this authority to recharacterize, the federal court must first ask whether the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the

plaintiff's state claim falls … If the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in the federal court.

*Railway Labor,* 858 F.2d at 942 (citing *Franchise Tax Board,* 463 U.S. at 24, 26, 103 S.Ct. 2841). This two part test for complete preemption is "the only basis for recharacterizing a state law claim as a federal claim removable to a district court." *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 312 (3d Cir.1994). If the above prerequisites are met, the state law claim is "recharacterized" as a federal claim and removal is proper. The Supreme Court has only found complete preemption to exist in a limited number of circumstances, such as Section 502(a) of ERISA and Section 301 of the Labor Management Relations Act.[7]

is normally only a defense, but then concluded that in cases where a state claim is not only preempted, but the claim falls within civil enforcement provisions of the federal law, the claim "arises under" federal law for purposes of federal question jurisdiction. "Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [the federal law in question] removable to federal court." *Metropolitan Life Ins. Co.,* 481 U.S. at 66, 107 S.Ct. 1542. *See also* 15 James Wm. Moore *et al., Moore's Federal Practice,* ¶ 103.45[1] (3d ed.1999).

7. Another corollary of the well-pleaded complaint rule is the concept of "artful pleading" of a complaint. Pursuant to this rule, Plaintiffs may not defeat removal by "artfully" drafting his or her complaint, thereby failing to state a necessary federal question. As stated by the Supreme Court, although "the party who brings the suit is master to decide what

law he will rely upon … it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. 2841. If Defendants prove that Plaintiffs have in fact omitted a necessary federal question, such federal question will be deemed to be alleged in the complaint. *See* 16 James Wm. Moore *et al., Moore's Federal Practice,* § 107.14[3][a] (3d ed.1999).

Several circuits, including the Third Circuit, do not distinguish between the artful pleading doctrine and complete preemption. *See Goepel,* 36 F.3d at 311 n. 5 ("This same principle [of complete preemption] has been referred to elsewhere as the 'artful pleading' doctrine, under which a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim") (citations omitted).

### III. *DISCUSSION*

In the instant case, Plaintiffs' Complaint does not rely on federal law; all of the claims expressly stated by Plaintiffs are traditional state law tort and fraud claims. Nonetheless, Defendants contend that removal is proper, and make several separate but related arguments in opposition to Plaintiffs' motion to remand. Defendants first claim that because Plaintiffs' Complaint seeks injunctive relief in a form which requires further approval from the FDA under the FDCA, 21 U.S.C. § 321 *et seq.*, federal question jurisdiction exists. Specifically, Defendants contend that *any* change to the literature, labeling or other information they disseminate requires further approval of the FDA. Defendants argue that because Congress expressly entrusted the FDA to approve and handle all federally-regulated drug labeling, the state court lacks the power to provide this injunctive relief.

Even assuming, *arguendo*, that a state court could not order the injunctive relief sought by Plaintiffs without the approval of the FDA, removal does not necessarily follow.[8] If it is presumed that, in enacting the FDCA, Congress determined that only the FDA may approve changes to labels or other literature regarding FDA-approved drugs, Defendants would have only established that the FDCA may provide a *defense* to Plaintiffs' state law claims or remedies. However, removal is not proper if based on a defense or an anticipated defense which is federal in nature, even if both parties admit that the federal defense is the only real question in the case. *See*

Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425.[9]

The existence of a federal defense (also known as "defensive preemption") does not provide a sufficient federal question for removal. *Metropolitan Life Ins. Co.,* 481 U.S. at 67, 107 S.Ct. 1542. "The fact that [Defendants] might ultimately prove that [Plaintiffs'] claims [for injunctive relief] are pre-empted under [the FDCA] does not establish that they are removable to federal court." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425. Even assuming that the FDCA preempts the injunctive relief sought by Plaintiffs, this Court lacks jurisdiction unless (1) "the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls," *Railway Labor,* 858 F.2d at 942 (citing *Franchise Tax Board,* 463 U.S. at 24, 26, 103 S.Ct. 2841); and (2) there is "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor,* 858 F.2d at 942 (citing *Metropolitan Life,* 481 U.S. at 64–66, 107 S.Ct. 1542).

The FDCA contains no private civil enforcement provisions which would encompass Plaintiffs' claims. *See Thompson v. Merrell Dow Pharmaceuticals,* 766 F.2d 1005 (6th Cir.1985); *aff'd Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). *See also In re Orthopedic Bone Screw Products Liability Litigation,* 193 F.3d 781, 788 (3d Cir.1999) ("It is well

---

**8.** Plaintiffs dispute the contention that the injunctive relief requested constitutes "labeling" under the FDCA, thereby requiring approval of the FDA. However, even if Plaintiffs could not obtain the injunctive relief without FDA approval, this merely provides a *defense* to the injunctive relief sought by Plaintiffs. For the reasons described above, remand

would still be appropriate, and this Court need not resolve the issue of whether FDA approval is actually required.

**9.** Even if Plaintiffs had claimed a violation of the FDCA as an element of a state law claim, removal would not be proper under *Merrell,* 478 U.S. at 810–811, 106 S.Ct. 3229.

settled ... that the FDCA creates no private right of action"); *PDK Labs., Inc. v. Friedlander,* 103 F.3d 1105, 1113 (2d Cir. 1997); *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1139 (4th Cir.1993).

As the Supreme Court found in *Merrell,* because no federal right of action existed under the FDCA, removal was not proper:

> The significance of the necessary assumption that there is no federal private cause of action thus cannot be overstated. For the ultimate import of such a conclusion, as we have repeatedly emphasized, is that it would flout congressional intent to provide a private federal remedy for the violation of the federal statute. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute ...

*Merrell,* 478 U.S. at 812, 106 S.Ct. 3229.[10]

It is thus without doubt that there is no civil remedy available to Plaintiffs under the FDCA. Furthermore, as stated in *Merrell,* the lack of a private remedy in the FDCA is evidence that Congress did not intend that these types of claims be removed to federal court. *See Merrell,* 478 U.S. at 812, 106 S.Ct. 3229.[11]

---

10. In *Merrell,* the Supreme Court also considered some of the other arguments raised by Defendants in this case. Specifically, the Court rejected the petitioner's arguments that federal jurisdiction should lie because (1) a substantial, disputed question of federal law (interpretation of the FDCA labeling) was an element of the state law cause of action and (2) there is a powerful federal interest in seeing that the FDCA is given uniform interpretation. *Merrell,* 478 U.S. at 812–816, 106 S.Ct. 3229. Ultimately, the Supreme Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under'" federal law. *Id.* at 817, 106 S.Ct. 3229.

11. Defendants also argue that removal is proper because Plaintiffs' claims present a "substantial, disputed question of federal law"—interpretation of the FDCA. *See Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. 2841. In *Franchise Tax Board,* the Supreme Court did state that removal jurisdiction may be proper where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." 463 U.S. at 13, 103 S.Ct. 2841. The Third Circuit has interpreted that phrase to be the same question as whether a state action is 'really' one of federal law (i.e. if the state law claim is completely preempted). *Goepel,* 36 F.3d at 310. "[W]e concluded that careful examination of the framework of the Court's analysis of the 'substantial, disputed question of federal law' issue in *Franchise Tax Bd.* manifests that the Court was not enunciating a new basis for federal jurisdiction but instead was reaffirming the traditional well-pleaded complaint test ... Accordingly, unless we determine that one of the [parties'] state claims is 'really one of federal law' ... removal of the case to the district court was improper." *Goepel,* 36 F.3d at 310 (internal citations omitted). Moreover, in *Merrell,* the Supreme Court dismissed the applicability of the 'substantial, disputed question of federal law' test to the *Merrell* facts, and noted that "Our actual holding in *Franchise Tax Board* demonstrates that this statement must be read with caution; the central issue presented in that case turned on the meaning of the Employee Retirement Income Security Act of 1974 ... but we nevertheless concluded that federal jurisdiction was lacking." *Merrell,* 478 U.S. at 809, 106 S.Ct. 3229. The Court further noted "*Franchise Tax Board* ... did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813, 106 S.Ct. 3229. As a result of this statement by the Supreme Court and others, Federal courts rarely grant jurisdiction on this prong of *Franchise Tax Board.*

In the instant case, the only substantial question of federal law which *may* require resolution is the labeling requirements of the FDCA, which, as noted above, only arises as a defense. Plaintiffs' claim for injunctive relief

Defendants provide several counter-arguments. Defendants contend that despite the lack of a private federal remedy under the FDCA, complete preemption exists because Plaintiffs may avail themselves of a federal remedy under the Administrative Procedure Act, 5 U.S.C. § 702, 706 (the "APA"). Section 702 of the APA does provide Plaintiffs with a cause of action *against the FDA* for review of any action of that agency. However, the substitute federal cause of action which allows a federal court to recast a state claim as a federal claim under the complete preemption doctrine must be a cause of action "vindicating the same interest the plaintiff's state law cause of action seeks to vindicate." *Goepel*, 36 F.3d at 312 (citing *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. 2841). In the instant case, Plaintiffs are not faulting the FDA for any alleged wrongs, but claim that the Defendants deceived consumers and purchasers of Ritalin about its negative and positive implications. A suit against the FDA therefore would not vindicate the same interests as Plaintiffs seek to vindicate by their current claims against Defendants.

The availability of a remedy under the APA does not vindicate the same interests as Plaintiffs seek to vindicate here, and also does not demonstrate Congressional intent to permit removal despite Plaintiffs' exclusive reliance on state law. *See Railway Labor*, 858 F.2d at 942 (citing *Metropolitan Life*, 481 U.S. at 64–66, 107 S.Ct. 1542). *See also Utley v. Varian Assoc., Inc.* 811 F.2d 1279, 1284 (9th Cir.1987), *cert. denied* 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987) ("These remedies [under the APA] ... are not comparable to a suit brought against [Defendants] in federal court. Judicial review under the APA typ-

ically involves suit against [the agency], not [Defendants] .... Neither remedy indicates congressional intent to permit suit against [Defendants] in federal court, and thus neither supports removal jurisdiction under *Merrell Dow* ").

Defendants also seek to recharacterize Plaintiffs' misrepresentation claims as "fraud on the FDA" claims, and rely on the recent Supreme Court decision in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). In *Buckman*, plaintiffs sought damages resulting from the use of orthopedic pedicle screws, and sued the consulting firm that assisted the manufacturer in applying to the FDA for approval (under the Medical Device Amendments ("MDA") to the FDCA). The claim alleged the fraudulent representation of the use and effects of the device to the FDA. *Id.* at 1015–1017. The Court noted that the *Buckman* plaintiffs' "fraud on the FDA" claim did not rely on traditional tort law, but rather relied on the MDA regulations as a critical element of the cause of action. In other words, the "fraud on the FDA" claim necessarily involved a finding of a violation of the MDA. *Id.* at 1017–1019. The Supreme Court held that these "fraud on the FDA" claims conflict with, and are preempted by, the MDA because these Amendments specifically empower the FDA, not individual consumers, to punish and deter fraud against the agency. *Id.* at 1017. Although *Buckman* did not address any jurisdictional issues of removal, Defendants interpret the Court's holding as finding both implied preemption and the elements of the jurisdictional doctrine of complete preemption.

---

for their state law cause of action does not "depend on resolution of federal law"; it may only be preempted by the existence of federal law as a defense. Thus, for the reasons stated

in *Merrell*, 478 U.S. at 813–817, 106 S.Ct. 3229, and described above, there is no federal question jurisdiction under that principle of *Franchise Tax Board*.

This Court's reading of *Buckman* does not create federal question jurisdiction in this case. Plaintiffs' Complaint here does not allege a claim of "fraud on the FDA," but rather alleges that Defendants deceived the public, including Plaintiffs. (Compl.¶ 39). The Supreme Court in *Buckman* expressly distinguished "fraud on the FDA" claims from other state tort claims for fraudulent labeling, such as those that the Court had previously addressed in *Medtronic v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). *Buckman*, 121 S.Ct. at 1020. In *Medtronic*, the Supreme Court held that the plaintiff's state law claims based on allegedly defective labeling and manufacturing of pacemaker devices were not preempted by the federal labeling and manufacturing requirements of the FDA. *Medtronic*, 518 U.S. at 501, 116 S.Ct. 2240. In *Buckman*, the Supreme Court distinguished *Medtronic* by stating "although Medtronic can be read to allow certain state-law causes of actions that parallel federal safety requirements, it does not and cannot stand for the proposition that any violation of the FDCA will support a state law claim." *Buckman*, 121 S.Ct. at 1020. *Buckman* thus clarified that traditional state tort law claims (even those which parallel FDCA requirements) are not necessarily preempted by the FDCA and are not necessarily the same as "fraud on the FDA" type claims. *Id.*

Unlike the claims in *Buckman*, a finding of a violation of the FDCA is not a necessary element of Plaintiffs' claims, which rely on traditional state tort principles. Plaintiffs are not claiming a violation of the FDCA; their claims are confined to traditional state tort and fraud claims, similar to those in *Medtronic*. Plaintiffs' claims rely on traditional state tort law, and there is no federal cause of action that supplants those claims.[12]

Although this Court is sympathetic to Defendants' argument that it would be more efficient and practical to have a uniform federal ruling addressing these claims that have been filed in myriad state court proceedings, the Supreme Court has rejected such a basis for federal question jurisdiction. *See Merrell*, 478 U.S. at 815–816, 106 S.Ct. 3229. While it is true that Plaintiffs may have no right to the injunctive relief they seek in state court due to the FDCA, such "defensive preemption" does not convert Plaintiff's state law claim to one that "arises under" the laws of the United States. This Court declines to extend the doctrine of complete preemption to the FDCA, in light of Congress' determination that no private right of action exist for violations of that statute. *See Merrell*, 478 U.S. at 812, 106 S.Ct. 3229.

## IV. CONCLUSION

For the foregoing reasons, there is no federal question jurisdiction which permits removal of this case. Plaintiffs' motion to remand is granted, and this Court may not reach the merits of Defendants' motions to dismiss. An appropriate Order will issue.

---

**12.** Moreover, while *Buckman* addressed the issue of implied preemption of state law "fraud on the FDA" claims by the FDCA, the jurisdictional doctrine of complete preemption was not at issue in *Buckman*. Implied or "ordinary" preemption is different from the jurisdictional concept of "complete preemption", and ordinary preemption does not create federal question jurisdiction. Therefore, even assuming, *arguendo*, that Plaintiffs' claims are "fraud on the FDA" claims, federal question jurisdiction still would not exist because two of the requirements for the doctrine of complete preemption are not met in this case—there is no private federal remedy, and there is no indication that Congress intended to permit these claims to be removed. *See Railway Labor*, 858 F.2d at 942.